Hillsborough, }
Dec. 4, 1923. }

ARTHUR K. DOMOCARIS *v.* METROPOLITAN LIFE INSURANCE CO.

In order to invalidate a life insurance policy containing a provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, upon the ground of misrepresentations on the part of the insured, it must appear that the representations made by the insured were false and fraudulent as well as material to the risk.

Under Laws 1907, *c.* 109, *s.* 1, one who in soliciting insurance writes false answers in the application, or falsely interprets the answers of the insured or his beneficiary, is the agent of the insurer and, in the absence of fraud or collusion by the applicant, the insurer is liable on the policy.

A policy containing the provision, "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties," is contestable only for wilful misrepresentation.

ASSUMPSIT, on a policy insuring the life of Sophia Domocaris. Trial by jury and verdict for the plaintiff. The defendant's motions for a nonsuit and directed verdict were denied by *Sawyer*, J., subject to exceptions.

The defendant excepted to a portion of the charge as follows: "The defendant desires an exception to so much of the charge as states in effect that, if the plaintiff and his wife correctly stated the true facts to the agent and he wrote false answers in the application and falsely interpreted to the medical examiner, that the defendant is liable." The date of the policy was April 21, 1920. The assured died in September, 1920, of tuberculosis. The plain-

tiff's evidence tended to establish the following facts. The plaintiff informed the agent of the company when the agent solicited him to write insurance upon the lives of himself and his wife, Sophia Domocaris, that his wife had been in a hospital in Manchester and at the hospital in Grasmere in the fall of 1919; that the doctors who attended her told him that his wife had pleurisy and consumption; that in the winter of 1920 he decided to send his wife to Greece, and showed the agent the ticket for her transportation there; that when the physician for the defendant examined his wife he gave him in her presence the same information. The assured could not speak, read or write the English language. The plaintiff could not speak or write that language, and could understand only a few words of it. The plaintiff gave the information to the agent in the Greek language, and he, who could speak, read and write the English language, wrote down the answers upon the applications in that language, and the assured and the plaintiff signed them at his request. The agent also interpreted the answers the plaintiff made in the presence of the assured to the defendant's examining physician. After the applications were signed the agent read the answers to the plaintiff and the assured, and they were, as read by him, the same as they had given him. In answer to a question in the assured's application, that if within twelve months she contemplated journeying outside the United States or Canada, or making an ocean trip, the agent wrote "no." The application contains the following statements made to the medical examiner by the assured: "I have never had pleurisy or consumption. I am now in sound health . . . nor have I any physical or mental infirmity of any kind. I have not been under the care of any physician within two years. I have never been under treatment in any hospital." The application is attached to the policy and made a part thereof.

*Samuel J. Dearborn* and *Arthur B. Hayden* (*Mr. Dearborn* orally), for the plaintiff.

*Branch & Branch* (*Mr. Frederick W. Branch* orally), for the defendant.

PLUMMER, J. The exceptions to the denial of the defendant's motions for a nonsuit and a directed verdict, and to the charge, present the same question. The evidence fully warranted the finding of the jury that the plaintiff and the assured correctly stated

the true facts to the agent, and that he wrote false answers in the application and falsely interpreted to the medical examiner. The question, therefore, for consideration is whether the defendant under such circumstances is liable.

Section 1, chapter 109, of the Laws of 1907 provides that "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured, or his beneficiary, and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured." It is clear that when the agent was engaged in writing in the application false answers, and was falsely interpreting to the medical examiner, he was the agent of the defendant. In performing these acts which were within the scope of his employment, he was the representative of the company. His act was its act, and his knowledge was its knowledge. The policy was written by the defendant with full knowledge of the physical condition of the assured, and it is a valid contract untouched by any fraud of the plaintiff or the assured, upon which the defendant is liable. To hold that the plaintiff cannot collect this policy of insurance, which was obtained through no dishonesty on his part or that of the assured, but was written by reason of the fraudulent conduct of the defendant's own agent, would fall far short of meeting the demands of justice. It was the fault of the company that this dishonest man was made its agent with authority to solicit insurance of the plaintiff and the assured, and the defendant and not the plaintiff, who has done no wrong, must suffer on account of his fraudulent conduct. "There being no fraud imputed to the plaintiff, the defendants were chargeable with their agent's knowledge of the situation and were bound by his acts. The policies issued through his instrumentality were valid and subsisting contracts as against the company and in favor of the assured, who innocently relied upon the agent's representations." *Delouche* v. *Insurance Co.*, 69 N. H. 587. *McDonald* v. *Insurance Co.*, 68 N. H. 4, relates to a policy of insurance issued through the fraud of the company's agent. In the opinion, the court said: "It would be a fraud on their part to hold him [the assured] to the truth of the representation which he did not in fact make, and of whose falsity they must be deemed to have had notice." "An insurance company cannot dispute the truthfulness of false statements written in the application for insurance by its agent without fraud or collusion on the part of the applicant, where the applicant made truthful answers to the agent, even though such

statements are expressly made warranties on the basis of which the policy is issued." 25 Cyc. 803, and numerous cases there cited.

The defendant cites *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, in support of its contentions. An examination of that case will show that the circumstances there were different, and it does not appear that Missouri, where the case originated, had a statute like the one in this state making any person who shall solicit an application for insurance upon the life of another the agent of the company.

In a later case in the same court, *Continental Life Ins. Co.* v. *Chamberlain*, 132 U. S. 304, which was an action to recover the amount due upon a life insurance policy, the agent of the company wrote a false or incorrect answer in the application of the assured relating to a matter material to the risk, and it was held that the company was liable. It was an Iowa case and there was a statute in that state in reference to agents of life insurance companies like the one in this state above referred to, and the decision was largely based upon that statute. The following cases similar to the present action are authorities for the plaintiff. *Union Mut. Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *American Life Ins. Co.* v. *Mahone*, 21 Wall. 152; *New Jersey Mut. Life Ins. Co.* v. *Baker*, 94 U. S. 610; *Aetna Life Ins. Co.* v. *McCullagh*, 185 Ky. 664; *Michigan Life Ins. Co.* v. *Leon*, 138 Ind. 636; *Lindstrom* v. *Insurance Co.*, 84 Or. 588; *Clubb* v. *Accident Co.*, 97 Ga. 502; *McGurk* v. *Insurance Co.*, 56 Conn. 528; *Van Houten* v. *Insurance Co.*, 110 Mich. 682; *Pfiester* v. *Insurance Co.*, 85 Kan. 97; *Royal Neighbors of America* v. *Boman*, 177 Ill. 27.

The policy contains a provision that "all statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties." It has been held that life insurance policies containing such a provision "are contestable only for willful misrepresentation." *American Bankers' Ins. Co.* v. *Hopkins*, 67 Okla. 150; *Sharrer* v. *Insurance Co.*, 102 Kan. 650. In *Guarraia* v. *Insurance Co.*, 90 N. J. Law 682, the court in the opinion said: "The question then is with reference to the effect of the statement. If it was a warranty the policy falls; if it was only a misrepresentation, the question of intentional falsehood becomes material. The policy says: 'All statements by the insured shall, in the absence of fraud, be deemed representations and not warranties.' The result of this seems to be that they are made the legal equivalent of representations in any case and we must look for fraud in order to vitiate the

policy. Here we are met by the fact that the insured was an Italian, apparently not well acquainted with the English language, confronted with an English-speaking doctor, who probably conducted the examination in the usual more or less perfunctory manner and had the insured sign the paper more or less as a matter of form. The judge left it to the jury to say whether there had been intentional misrepresentation. We are inclined to think that this course was right. There is little doubt that the deceased had consumption or that he probably had chronic bronchitis and probably other diseases, but the terms of the policy require the company to show that he had intentionally misrepresented these matters, and we do not think that this was shown as a court question."

Chief Justice *Shaw* in *Daniels* v. *Insurance Company*, 12 Cush. 416, defines the difference between a warranty and a representation. "If any statement of fact, however unimportant it may have been regarded by both parties to the contract, is a warranty, and it happens to be untrue, it avoids the policy; if it be construed a representation, and is untrue, it does not avoid the contract if not wilful, or if not material." This case is cited and relied upon in *Clark* v. *Insurance Co.*, 40 N. H. 333.

*Suravitz* v. *Insurance Co.*, 244 Pa. St. 582, is an action on a life insurance policy containing a provision that all statements of the assured are to be deemed representations and not warranties. The contention in that case was that the agent wrote down the answers of the assured in the application incorrectly. The court in the opinion said: "What purpose had the contracting parties in mind when they wrote into their covenant that such statements would be deemed representations only? Was this a mere subterfuge, a change in terms without a change in meaning, or was the change intended to serve a more definite purpose by affording relief to those applicants who in good faith answered the interrogatories asked them by the agent of the insurance company who negligently, intentionally or fraudulently wrote down the answers incorrectly? In our opinion the change in the covenant from a warranty to a representation was intended to broaden the scope of inquiry in such cases so as to give relief to parties who in good faith take out policies of insurance, from the harshness, and in many instances the injustice, of the old rule applicable to warranties. If this be the correct view, and it is certainly the just and equitable one, we can see no reason for limiting the inquiry to the single question of the materiality of the answer. Whether true answers were made and

whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the answers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and parties should not be denied the right to have such matters determined before a proper tribunal unless they have covenanted otherwise."

The following statement of the court in this case has special application to the present case: "The deceased was a Hungarian with a very imperfect knowledge of the English language. At the time of making her answers she spoke through an interpreter and there is no evidence that she either did or could read the policy or the application. In such a case a greater burden rests upon the insurer to deal fairly with the insured. This is especially true as to the acts of the agent in soliciting the insurance and writing down the answers."

In order to invalidate a life insurance policy containing a provision that all statements made by the assured shall, in the absence of fraud, be deemed representations and not warranties, upon the ground of misrepresentations on the part of the assured, it must appear that the representations made by the assured were false and fraudulent as well as material to the risk. The evidence warrants the conclusion that no false or fraudulent statements were made by the plaintiff or the assured to obtain the insurance, and therefore the defendant is liable.

*Exceptions overruled.*

All concurred.