Hillsborough,
April 4, 1939. } No. 3010.

APOSTOLOS BOUCOUVALAS

*v.*

JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

*Arthur B. Hayden, Ralph A. Ashton,* and *Osgood & Osgood* (*Mr. Hayden* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

WOODBURY, J.   The facts recited above disclose a situation parallel to the one considered by this court in the case of *Bilodeau* v. *Insurance Co.*, 84 N. H. 405, and the plaintiff contends that he is entitled to judgment under the rule announced in that case.   The defendant admits that the facts in the case last cited and in the one at bar are substantially similar, but contends that this court adopted an erroneous view of the law not only in the *Bilodeau* case but also in the case of *Domocaris* v. *Insurance Co.*, 81 N. H. 177, upon which it is based, and urges that we now overrule both of those decisions.

In the *Domocaris* case the liability of the defendant was predicated upon the statute (Laws 1907, *c.* 109, *s.* 1, now P. L., *c.* 277, *s.* 6), which provides that any person who solicits an application for insurance upon the life of another shall be regarded as the agent of the insurer and not as the agent of the insured.   After quoting the above statute at length the opinion proceeds as follows: "It is clear that when the agent was engaged in writing in the application false answers, . . . he was the agent of the defendant.   In performing these acts which were within the scope of his employment, he was the representative of the company.   His act was its act, and his knowledge was its knowledge.   The policy was written by the defendant with full knowledge of the physical condition of the assured, and

it is a valid contract untouched by any fraud of the plaintiff or the assured, upon which the defendant is liable."

This rule was criticised in the later case of *Bilodeau* v. *Insurance Co.*, *supra*, upon the ground that it constituted a departure, "from common-law doctrines of agency" and upon the ground that it produced the effect of making "the insured better off than if no fraud had been committed so as to substitute a penalty for compensation." Nevertheless in this later case the rule of the earlier one was followed for the reason that after the decision in the earlier case was announced the statute relating to life insurance agents had been reënacted without change in the Public Laws of 1925, and that this reënactment "carried with it this construction under the well and long established rules that the reënactment of a statute without change adopts its prior judicial interpretation."

In the case of *Karp* v. *Insurance Co.*, 86 N. H. 124, 126, it was said with reference to the rule of the *Domocaris* case that "its utility as an instrument for the accomplishment of substantial justice is extremely dubious," and this criticism was reiterated in *Levesque* v. *Insurance Co.*, 88 N. H. 41, 44.

The above strictures on the rule are well founded. In the *Domocaris* case it was apparently assumed that the statute which made the agent who solicited the insurance the agent of the company also made the company chargeable with its agent's knowledge of uninsurability of the applicant. Such is not in fact the case. This statute, unlike the one relating to soliciting agents for fire insurance companies (P. L., c. 276, s. 5), does not provide that the insurer shall be charged with its agent's knowledge of facts relating to the risk "as if they were stated in the application." With respect to life insurance the legislators saw fit to go no further than to provide that the agent who solicits the policy shall be regarded as the agent of the insurer; it left the decision of the question of the scope and extent of the agency relationship which it created to the common law. The question presented, then, is not one of statutory construction at all but it is one of determining the common-law rule relating to the chargeability of a principal with the knowledge of his agent.

This rule is stated in *Brookhouse* v. *Company*, 73 N. H. 368, 374, citing *Allen* v. *Railroad*, 150 Mass. 200, in the following language: "It is true that a principal is ordinarily chargeable with the knowledge acquired by his agent in executing the agency, and is subject to the liabilities which such knowledge imposes. But there is a well

established exception to this rule, by which the principal is not charged with the knowledge of his agent when the latter is engaged in 'committing an independent, fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act'." In the *Brookhouse* case many others are cited in support of this rule, among them *Clark* v. *Marshall*, 62 N. H. 498, 500.

Two years later, in the case of *Warren* v. *Hayes*, 74 N. H. 355, 356, 357, this court said that "the principal is not charged with his agent's knowledge regarding a particular transaction unless the latter's acts in respect to it were within the scope of his employment," and in this case the rule is summarized in the statement that "The test, therefore, to determine whether an agent's knowledge is to be imputed to his principal is to inquire whether or not the agent was acting for the principal when he did that in respect to which it is sought to charge the principal with his knowledge." See also *Dearborn* v. *Fuller*, 79 N. H. 217; *Ellsmore* v. *Director General*, 80 N. H. 100; *Castonguay* v. *Company*, 83 N. H. 1; *Henry* v. *Allen*, 151 N. Y. 1.

Applying the foregoing rule to the facts in the case at bar it is evident that the defendant is not chargeable with its agent's knowledge of the poor health and hospital record of the insured. In soliciting the application for the policy of life insurance the agent was without doubt acting within the scope of his employment, but in falsely reporting the answers made by the insured to the questions contained therein the agent was engaged in an independent fraudulent act upon his own account and for his own benefit. It cannot be said that when the agent embarked upon this scheme to defraud not only the insured but also the insurer that he was acting either for the latter or in its behalf. It might be argued that the insurer is bound by its agent's knowledge because the latter, although personally engaged in perpetrating a fraud, was still acting as an agent of the defendant when he solicited the policy. "The defect in this reasoning is that when the agent acts in this dual way knowledge on his part is not chargeable to his principal." *Dearborn* v. *Fuller*, *supra*.

In the *Domocaris* case (p. 179), it is said: "To hold that the plaintiff cannot collect this policy of insurance, which was obtained through no dishonesty on his part or that of the assured, but was written by reason of the fraudulent conduct of the defendant's own agent, would fall far short of meeting the demands of justice. It was the fault of the company that this dishonest man was made its agent with

authority to solicit insurance of the plaintiff and the assured, and the defendant and not the plaintiff, who has done no wrong, must suffer on account of his fraudulent conduct." Whatever may be the situation with respect to policies of fire insurance where the statutory provisions, as noted above, are different, and where almost any property may be insured at some premium, this argument, as pointed out in *Ryan* v. *Insurance Co.*, 41 Conn. 168, fails when applied to policies of life insurance. The reason for this is that it regards the plaintiff's loss of a benefit to which he was not entitled as though it were a detriment to him. This is not so. The only real loss sustained by the insured consisted in the sums paid by him as premium and these sums the insurer has tendered back. To give the beneficiary the face of the policy would not be to reimburse the insured, it would be to confer a gratuity upon the plaintiff; it would serve, as said in the *Bilodeau* case, "to make the insured better off than if no fraud had been committed so as to substitute a penalty for compensation."

Not all of the authorities cited in the *Domocaris* case sustain its result. The cases of *Union Mut. Insurance Co.* v. *Wilkinson*, 13 Wall. 222, and *Am. Life Insurance Co.* v. *Mahone*, 21 Wall. 152, are not cases involving fraud. The cases of *Continental Insurance Co.* v. *Chamberlain*, 132 U. S. 304; *N. J. Mut. Life Insurance Co.* v. *Baker*, 94 U. S. 610; *Aetna Life Insurance Co.* v. *McCullagh*, 185 Ky. 664, and *McGurk* v. *Insurance Co.*, 56 Conn. 528, are readily distinguishable. In them the agent, without fraud, mistakenly interpreted the questions contained in the application. In this situation the insurer was held liable upon its policy for the reason that the agent was acting within the scope of his authority in construing the questions asked. It does not, of course, follow from this that the agent is also acting within the scope of his authority when he embarks upon a scheme to defraud his principal. The other authorities cited in the *Domocaris* case are in accord with its result, but we do not consider them to be sound in principle.

With the exception of the *Domocaris* and *Bilodeau* cases no others squarely in point in this jurisdiction have come to our attention. But, in *McDonald* v. *Insurance Co.*, 68 N. H. 4, which was an action of assumpsit to recover back the premium paid for a policy of life insurance issued by the defendant upon the basis of a false answer as to the occupation of the insured and, upon discovery thereof, canceled by the latter, the following language appears. "No fraud is imputable to the plaintiff. On the contrary, the facts show that both parties acted in good faith, and were alike deceived by the agent.

By his fraudulent conduct the plaintiff was unwittingly placed in the position of making a false representation for the purpose of securing a valuable contract which, upon a truthful statement of his occupation, could not have been obtained; and by that representation the defendants were induced to consummate the contract, and subsequently to terminate it. 'When both the insured and the insurer are deceived by fraudulent acts of an agent . . . if both parties acted *bona fide,* the policy should be canceled and the premiums returned'." The above quotation, although erroneously attributed to *New York Life Insurance Co.* v. *Fletcher,* 117 U. S. 519, correctly summarizes the principle upon which that decision is based. See page 529. This latter case and the case of *Ryan* v. *Insurance Co.,* 41 Conn. 168 are the leading authorities in this country for the result contrary to that reached in the *Domocaris* case; and the earlier decisions of this court were in accord with them, *McDonald* v. *Insurance Co.,* 68 N. H. 4; *Delouche* v. *Insurance Co.,* 69 N. H. 587.

We are of the opinion that the rule of the *McDonald* and *Delouche* cases ought to have been consistently followed by this court, . . ." that the rule of the *Fletcher* and *Ryan* cases is sound and that the rule of the *Domocaris* case is both unsound in principle and unfortunate in result. It is hereby overruled.

It does not avail the plaintiff that the assured was unable to read or write the English language. *Levesque* v. *Insurance Co.,* 88 N. H. 41, 43 and cases cited. He was bound by the representation of truthfulness contained in the application which he signed even though he did not and could not read it. If it might be found that he was induced to sign the application by reason of the fraud of the defendant's agent, that fraudulent act was only a part of the agent's entire scheme of double-dealing, and as appears above, the defendant is not chargeable therewith.

There remains to be considered the argument relied upon in the *Bilodeau* case to the effect that regardless of whether or not the rule of the *Domocaris* case is correct, adherence to it is compelled for the reason that since it was announced the statute relied upon therein, (Laws 1907, *c.* 109, *s.* 1), was reënacted without change by the legislature. P. L., *c.* 277, *s.* 6.

We are not called upon to consider the validity of this rule in general because upon more detailed analysis it appears to be inapplicable to the situation presented. As already appears, the actual question presented in the *Domocaris* case was not one of statutory construction. This court was not then, any more than it is now, called upon

to construe the above statute or to give a meaning to any of its terms. The factual situation under consideration presents a question of the common-law rule applicable to an agency relationship of statutory origin. As a rule of the common law it stands as others do, subject to judicial revision or reversal without regard to the reënactment by the legislature of the statute which creates the relationship to which the common-law rule applies. *Jaffrey* v. *Smith*, 76 N. H. 168, 171; *Niemi* v. *Railroad*, 87 N. H. 1, 9, *et seq.*

Since the defendant's motion for a nonsuit should have been granted, its other exceptions do not require consideration.

*Judgment for the defendant.*

ALLEN, C. J., and MARBLE, J., dissented: the others concurred.