Merrimack,
No. 5317.

JOHN E. TAYLOR *v.* METROPOLITAN LIFE INSURANCE COMPANY.

Argued April 6, 1965.
Reargued September 9, 1965.
Decided October 29, 1965.

Cofran, Quint & Greenhalge (*Mr. Frederic T. Greenhalge* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Lawrence E. Spellman* (*Mr. Spellman* orally), for the defendant.

LAMPRON, J. Arthur Swenson was on July 1, 1959, when the policy in question was issued, an authorized and trained agent of Metropolitan dealing only in policies issued by it. Prior to that date he had visited the plaintiff Taylor to collect premiums on existing policies and discuss the prospects for additional coverage. On July 1, 1959, he called on Taylor and his wife and discussed with them the issuance of the present policy. Pursuant to the training given to him by Metropolitan, Swenson read to Taylor each and every question in the application consisting of two pages, entitled "Part A" and "Part B," both of which were signed by Taylor and witnessed by Swenson.

The sole issue before us is whether Metropolitan's motion to dismiss the Taylor suit as a matter of law was granted properly by the Trial Court. The company's main argument in support of this dismissal is that the plaintiff made false statements concerning his medical history in answer to questions 7 and 8 "Part B" of the application signed by him which became a part of the insurance contract between the parties.

Question 7 read as follows: "Have you, within the past five years, had any treatment, examination, or advice, by a physician or other practitioner, or at a clinic, hospital, dispensary, or sanatorium? (If yes, give particulars of each instance in item 8 below)." When Swenson read this question to him, "Taylor told Swenson that he had had chest complaints commencing in the summer of 1956 and continuing through December of that year . . . Taylor further told Swenson that, as a result of these complaints he was examined on an outpatient basis at the Mary Hitchcock Clinic on November 1, 1956 and that nothing ever came of it, although he still had occasional twinges of pain. Swenson advised Taylor that he was not required to include that information under paragraph 7 of Part B. For that reason Taylor did not include such information in response to said paragraph 7." The answer to question 7 in the paragraph so

numbered in "Part B" of the application which was inserted by Swenson based upon answers given to him by Taylor was "No." Question 8 which sought "the details of any affirmative answers" to question 7 contained no entries.

The parties agree that on September 26, 1956, Taylor visited his family physician with complaints of chest pains and that X-rays of the affected area and electrocardiograph examination both proved negative. This doctor referred him to the Mary Hitchcock Clinic in Hanover where he was examined as an out-patient on November 1, 1956. At that time Taylor described chest pains of six years duration which had become worse. He was examined by three specialists and X-rays of the affected area again proved negative. He consulted his family physician three times in December, 1956, apparently with the same complaint and the last two entries in the doctor's records read "Some improvement." On November 6, 1960, after this insurance policy was issued, he consulted his family doctor with a complaint of "return of chest pain." X-ray examination of the affected area and electrocardiograms taken at that time were again negative as were those taken at the Hanover Clinic on February 8, 1961. Taylor was disabled on November 6, 1960, by this chest condition which his family doctor has since diagnosed as acute radiculitis. Webster's Third New International Dictionary defines radiculitis as "inflammation of a nerve root."

It is also agreed that Taylor consulted his physician on February 16, 1959, for "Pain back of neck, shoulder & rt. arm? neuritis." Also that he was hospitalized overnight on or about May 1, 1953, when his back "gave out." This ailment apparently originated when Taylor lifted "heavy buckets of lead, shortly after discharge from service." In November, 1956, it "only bothers at night — most when he turns over." Metropolitan does not claim that there is any medical connection whatsoever between this and the chest condition which disabled Taylor on November 6, 1960. Plaintiff's declaration alleges that the claim which is in issue before us at this time is for "an accidental injury resulting in total disability" suffered by Taylor on or about November 6, 1960.

RSA 415:9 provides as follows: "The falsity of any statement in the application for any policy covered by this chapter [Accident and Health Insurance] shall not bar the right to recover thereunder, unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance

of the risk or the hazard assumed by the insurer." Metropolitan correctly argues in its brief that "it is not material to the application of this statute that fraud be shown either in fact or by implication. It is sufficient that the false statements materially affected either the acceptance of the risk or the hazard assumed by the insurer."

However, relying on *Manelas* v. *Insurance Company,* 89 N. H. 559, 560, the company further maintains that a false statement as to medical history is held as a matter of law to have materially affected the acceptance of the risk. With this contention, we cannot agree. By the very language used in its enactment, the Legislature could not have intended that the non-fraudulent omission in an application of prior visits to a doctor for trivial ailments which passed away leaving no permanent effect would be held as a matter of law to have materially affected the issuance of the policy. The test under RSA 415:9 of the materiality of a false statement made without actual intent to deceive is whether the statement could reasonably be considered material in affecting the insurer's decision to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon. 12 Appleman, Insurance, *s.* 7294; Couch on Insurance 2d, *s.* 35:79. The questions of such materiality is for the trier of fact unless the record is such that the Trial Court must reach the conclusion that the statement materially affected the acceptance of the risk. *Heidenreich* v. *Metropolitan Life Insurance Co.,* 213 Md. 286; *Davidson* v. *Massachusetts Casualty Ins. Co.,* 325 Mass. 115; *Marshall* v. *Metropolitan Life Ins. Co.,* 337 Ill. App. 498, affirmed *Id.,* 405 Ill. 90; 22 Appleman, Insurance, *s.* 12861; Couch on Insurance 2d, *ss.* 35:48, 35:49, 35:79.

Metropolitan further correctly argues in its brief that, although RSA 408:7 regulates life insurance contracts, it, and the cases decided thereunder, illustrate the common-law rule that "the binding effect of an insurance agent's conduct is to be determined by the rules of the common law whether we are dealing with an application for life insurance or one for accident and health insurance." RSA 408:7 provides as follows: "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured, or his beneficiary, and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured." Under this statute it was held in *Boucouvalas* v. *In-*

*surance Co.,* 90 N. H. 175, that the insurer was not chargeable with the knowledge of the soliciting agent who fraudulently wrote false answers in an application which an illiterate applicant subsequently signed. In *Levesque* v. *Insurance Co.,* 88 N. H. 41, it was decided that the insurer was not chargeable with the negligent failure of the soliciting agent to ask the questions contained in the application. As was suggested in *Perkins* v. *Insurance Company,* 100 N. H. 383, 385 it is questionable whether this statute as construed is accomplishing its apparent objective.

It was stated in the *Boucouvalas* case, *supra,* that this statute created an agency relation between the agent and the insurer but left to the common law "the decision of the question of the scope and extent of the agency relationship which it created." *P.* 177. "The factual situation under consideration presents a question of the common-law rule applicable to an agency relationship of statutory origin. As a rule of the common law it stands as others do, subject to judicial revision or reversal without regard to the reenactment by the legislature of the statute which creates the relationship to which the common-law rule applies." *P.* 181.

The parties agree that Swenson was an authorized agent and employee of Metropolitan. He has been trained by this company and deals only in insurance policies issued by it. Previous to the date of the application and policy in issue, as such agent and employee he visited Taylor to collect premiums on existing policies and discuss the prospects for additional coverage. Pursuant to his training he read to Taylor the questions in the application and inserted the answers based on the information obtained from Taylor. As to question 7 "Part B" pertaining to medical treatment, examination or advice within the previous five years, Taylor told Swenson of his chest complaints, of his examination therefor as an outpatient at the Mary Hitchcock Clinic and that nothing ever came of it, although he still had occasional twinges of pain. Swenson advised Taylor that he was not required to include this information under question 7 and for that reason it was omitted.

Although the Trial Court refused to rule upon plaintiff's requests for findings, it stated, without ruling, that it agreed with plaintiff's following request: "That a reasonable person in the position of the plaintiff would be justified in relying upon the advice of a trained employee of an insurance company, such as Arthur Swenson, in regard to the requirements of an application for insurance with such a company." We agree that if, absent

circumstances which should arouse the applicant's suspicion, he reveals his previous medical history to the company's agent and is advised by him that certain information is not required to be included in the application, it could properly be found that the applicant need not question the authority or judgment of the agent but could rely on his statements that this information was not sought and did not require mention in the application. *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328; *Farmers & Bankers Life Ins. Co.* v. *Baxley*, 202 Okla. 531; 17 Appleman, Insurance, *s.* 9401, *p.* 13; 45 C. J. S., Insurance, *s.* 728.

In other words applying the governing general common-law principles of agency, it can be found, in the absence of fraud or collusion between the agent and the applicant, that this is the type of act which is within the employment of the agent and which the applicant can reasonably believe the agent is employed to perform. *Richard* v. *Company*, 79 N. H. 380, 383; Restatement (Second), Agency, *ss.* 272, 273, 282 (2) and Appendix *p.* 488; 45 C. J. S., Insurance, *s.* 730, *p.* 739; Couch on Insurance 2d, *s.* 35:192; 17 Appleman, Insurance, *s.* 9402, *p.*13. There is no evidence that agent Swenson was acting fraudulently and no basis to compel a finding that he was committing an independent fraudulent act on his own account. *Cf. Boucouvalas* v. *Company*, 90 N. H. 175, 177: *Leclerc* v. *Insurance Company*, 93 N. H. 234, 235. Metropolitan can be found to be bound by the knowledge of the facts pertaining to plaintiff's chest pains which their agent received while acting as such within the scope of his authority and in reference to a matter over which his authority could be found to extend. 3 Am. Jur. 2d, Agency, *s.* 273, *p.* 635.

Such a conclusion can be reached in spite of provisions in the application including the provisions that no statement made to or by, and no knowledge on the part of any agent as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the company unless stated in the application; and that the applicant has read the answers which are true and complete and that there are no exceptions thereto except as stated therein. It would be contrary to the purpose of RSA 408:7 to allow insurers to limit the agency which it creates and its legal consequences by inserting restrictive provisions in its applications. 29A Am. Jur., Insurance, *s.* 1065, *p.* 233. Furthermore such an attempt by one of the parties to

limit the authority of its agent will not relieve it from its liability under the general rules of agency in a situation where, as in this case, the agent within the apparent scope of his authority advises the applicant that certain information is not required by his principal. 29A Am. Jur., Insurance, *s.* 1064, *p.* 232; 7 Couch, Insurance 2d, *s.* 35:182.

The record does not compel findings as a matter of law that the illnesses which were not mentioned by the applicant in answer to question 7 "Part B" were omitted with actual intent to deceive or that their omission materially affected the acceptance of the risk or that the company was not chargeable with the knowledge of plaintiff's chest pains and his history of medical treatment therefor which he revealed to its agent. Consequently it was error to grant Metropolitan's motion to dismiss plaintiff's action as a matter of law.

General provision 5 of this policy, which may become material on trial, reads as follows: "Time Limit on Certain Defenses — (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability . . . commencing after the expiration of such two year period. (b) No claim for loss incurred or disability . . . commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy unless, effective on the date of loss, such disease or physical condition was excluded from coverage by name or specific description."

The above provisions, except that they are more liberal in providing a time limit of two years instead of the three-year limit provided in RSA 415:6 (A) (2) a, b, are in substantially the same terms as the statute. Like our statute, they must be given a reasonable interpretation. *Amoskeag Trust Co.* v. *Insurance Co.,* 88 N. H. 154, 157. Applying this standard we hold that under paragraph (a) misstatements, other than fraudulent, made by the applicant in the application for a policy cannot be used by the company after two years from the date of its issue to void the policy or to deny payment for a loss incurred or a disability which commenced after that two-year period. Under paragraph (b) the company cannot reduce or deny a claim for a loss incurred or a disability which commenced after two years from the date of issue of the policy on the ground that the dis-

ease or physical condition had existed prior to the effective date of the coverage under the policy. In other words it is the date the loss occurs or the disability commences and not the date on which claim therefor is made which determines the applicability of these provisions to bar the company's defenses. See *Davis* v. *Manchester,* 100 N. H. 335, 339. This interpretation also meets the test of what a reasonable person in the position of the insured should understand this provision to mean. *Lalos* v. *Tickler,* 103 N. H. 292, 295; *Malloy* v. *New York Life Ins. Co.,* 103 F. 2d 439 (1st Cir. 1939).

If this provision is interpreted to be an "incontestable clause" as that phrase is generally understood in regard to life insurance policies "every defense within the terms of or covered by such clauses or which is not excepted therefrom is precluded if not taken advantage of before the clause becomes operative in favor of assured." *Penn Mutual Life Ins. Co.* v. *Kelley,* 88 N. H. 351, 354. This imports a contest by litigation within that period either in the form of an action brought by the insurer or a defense made by it to an action of the insured. *Amoskeag Trust Co.* v. *Insurance Co.,* 88 N. H. 154, 157. *Massachusetts Mut. Life Ins. Co.* v. *Shattuck,* 328 Mass. 561. See Annot. 95 A.L.R. 2d 420, 422.

Most "incontestable" clauses now in general use provide that the policy shall be incontestable after a certain number of years from its date of issue except for defenses recited therein. 29A Am. Jur., Insurance, *s.* 1108, *p.* 269. In this state such a clause is required in most life insurance policies by RSA 408:10 (supp) and is permitted in certain accident and sickness policies by RSA 415:6 (A) (2) (a). However the clause used in general provision 5 of the policy issued by the defendant to the plaintiff and required by RSA 415:6 (A) (2) is known as "Time Limit on Certain Defenses." By its terms paragraph (a) thereof applies only to a "loss incurred or disability . . . commencing after the expiration" of "two years from the date of issue of this policy." As to such a loss or disability "no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim."

We hold this clause to mean that after the policy has been in force for the time limit of two years a misstatement in the policy application cannot be used as a defense to a claim for a loss incurred or a disability which commenced after that two-year period unless the insurer can affirmatively prove that the mis-

statement was made with intent to deceive. 27 N. Y. U. L. Rev. 670, 677. However as to a loss or disability which commenced within the two years the absence of the word "incontestable" in this clause shows a legislative intent not to require, as is the case with an "incontestable" clause, that the insurer must assert its defense in a judicial contest within the two years from the date of issue of the policy. Hence the defendant may raise after that period the defense of a non-fraudulent misstatement in the application against a claim for a loss incurred or a disability commencing before such two-year period of limitation has arrived. *Bronson* v. *Washington National Insurance Co.,* 207 N. E. 2d 172 (Ill. App. 1965).

In accident and sickness policies subject to cancellation the required use of a more restricted clause, barring defenses which the insurer can raise, than the broader incontestable clause found in most life insurance policies is based, among others, on the following reasons: (1) in a contest of an accident and sickness policy, the insured is generally alive and can testify to protect his rights while in the case of life insurance he is no longer available to rebut adverse claims of the insurer and the broader incontestable clause is needed to safeguard the rights of the beneficiary; (2) although a physical examination is required before a substantial life insurance policy is issued, most accident and sickness policies are written without such an examination and the benefit of the information it reveals; (3) in most life insurance contracts there can be only one claim on each policy and in a fixed amount while accident and health insurance subjects the insurer to many claims in varying amounts which can be potentially large. 27 N. Y. U. L. Rev. 670; 1957 Proceedings Section of Insurance, Negligence and Compensation Law, American Bar Association 103, 104-106.

Defendant admits that the pleadings now before us do not raise any issue in regard to the interpretation of paragraph (b) of general provision 5, the language of which is set out in the opinion. However defendant argued on rehearing that its interpretation might be in issue upon trial of this action. Hence we have considered the matter. By parity of reasoning used to interpret paragraph (a) we are of the opinion that paragraph (b) would not bar the insurer from raising, after two years from the date of issue, the defense of pre-existing disease or physical condition as to a loss incurred or a disability commencing within two years from the date of issue of the policy.

In view of the result reached it is unnecessary to consider plaintiff's argument that certain provisions in Metropolitan's application for this policy executed by him are contrary to our statutes governing insurance contracts, particularly RSA 402:25 and RSA 415:6, 7 (A).

*Exception sustained.*

All concurred.