Rockingham
No. 85-529

MUTUAL BENEFIT LIFE INSURANCE COMPANY

v.

DAVID A. GRUETTE

May 28, 1987

318

*Sulloway, Hollis and Soden,* of Concord (*Jeffrey S. Cohen* and *Michael P. Lehman* on the brief, and *Mr. Cohen* orally), for the plaintiff.

*Clark, Cook and Molan,* of Concord (*Robert T. Clark* on the brief and orally), for the defendant.

THAYER, J.   The defendant appeals from an order of the Superior Court (*O'Neil,* J.) approving the report of a Master (*Mayland H. Morse, Jr.,* Esq.) which granted the plaintiff's petition for rescission of a disability insurance contract. We affirm.

On February 20, 1980, the defendant, David Gruette, and Gerald Gagne, a licensed agent of the New York Life Insurance Company, met to fill out an application for disability insurance from the plain-

tiff, Mutual Benefit Life Insurance Company (Mutual Benefit). Although Gagne was not an agent of Mutual Benefit, his investigations into the matter lead him to believe that Mutual Benefit would provide the most satisfactory coverage for Gruette. The meeting progressed, with Gagne asking questions of the defendant and then recording the answers on the application form. Question 12(b) of the Mutual Benefit form requests information on the applicant's current disability insurance. The significance of this question is that Mutual Benefit has internal guidelines that limit the amount of disability insurance that may be provided to a certain percentage of the prospective insured's income.

When Gagne questioned Gruette on the subject of Gruette's disability insurance, Gruette informed Gagne that he had a policy with the Insurance Company of North America (INA). Gagne then told Gruette that he would only be able to obtain a certain level of coverage in proportion to his income, and that disclosure of the INA policy might jeopardize issuance of the Mutual Benefit policy. Gagne then entered a response of "none" to question 12(b) (pertaining to existing disability coverage) on the application. Gruette knew that the answer to question 12(b) was false, and yet acquiesced in the deception because he knew, or at least suspected, that disclosure would disqualify him from receiving the additional coverage he desired from Mutual Benefit. Gruette's participation in the filing of the deceptive application was compounded by the existence of cautionary language above the applicant's signature that "the foregoing statements are true and complete." Gruette also had in effect a policy with the Commercial Insurance Company (CIC), but was honestly unaware that the CIC policy afforded disability income protection, and thus did not tell Gagne of that policy. Gagne then submitted the deficient application to Mutual Benefit through the brokerage services of the Jules Meyer Agency of Boston. Mutual Benefit proceeded to issue a disability policy to the defendant.

On February 21, 1981, Gruette became disabled from psoriatic arthritis. Gruette applied for disability benefits from Mutual Benefit on March 5, 1981. At that time, Gruette disclosed the existence of his policies with INA and CIC. Mutual Benefit issued claims checks to Gruette while the company conducted an investigation. When Mutual Benefit verified the falsity of Gruette's application, it terminated the payment of benefits and brought this action for rescission.

The master found that, because Gruette already had in effect the maximum level of disability coverage, the failure to disclose the existence of either or both policies materially affected the risk accepted by Mutual Benefit. The master concluded that "if given

this knowledge or information at the time of application it is manifestly clear that the plaintiff would never have issued this policy for which rescission is now sought." The master also found that Gruette's participation in submitting the false application constituted an actual intent to deceive. Thus, two conditions of RSA 415:9, preventing recovery on policies containing false information that either was furnished with actual intent to deceive or materially affected acceptance of the risk, had been satisfied. Consequently, the master granted the plaintiff's petition for rescission. This appeal ensued.

The defendant presents the following contentions on appeal: (1) that Mutual Benefit's internal guidelines limiting provision of disability insurance coverage to a certain percentage of the insured's income are unreasonable and, consequently, that the master erred in allegedly finding as a matter of law that the failure to disclose the existence of the disability policies materially affected acceptance of the risk; (2) that the doctrine stating that an agent's fraudulent conduct is beyond the scope of the agent's authority and not imputable to the company is a harsh maxim and should not have been applied in this case; (3) that Mutual Benefit's acceptance, without investigation, of an application submitted by an independent broker unlicensed by Mutual Benefit constituted both a waiver of any defects in the application and an estoppel of the company's raising potential defenses; and (4) that RSA 415:6, II(4) and (5) prevent Mutual Benefit from limiting coverage based on other insurance policies.

The first issue we address is the reasonableness of Mutual Benefit's internal policy of limiting the provision of disability insurance coverage to a certain percentage of the insured's income. The relevant statutory provision reads as follows:

> "Falsity in Application. The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder, unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

RSA 415:9.

The defendant correctly states that "[t]he test under RSA 415:9 of the materiality of a false statement made without actual intent to deceive is whether the statement could reasonably be considered material in affecting the insurer's decision to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon." *Taylor v. Metropolitan Life Ins. Co.*,

106 N.H. 455, 458, 214 A.2d 109, 112 (1965). If Mutual Benefit's policy of providing disability coverage only up to a certain proportion of the applicant's income is unreasonable, then Gruette's omission of information regarding existing disability insurance could not "reasonably be considered material in affecting the insurer's decision to enter into the contract. . . ." *Id.*

■ The evidence, however, suggests that Mutual Benefit's guidelines were indeed reasonable. Robert Remondelli, a Mutual Benefit officer, testified on the basis of statistical information that the more one is paid in disability benefits, the less one is inclined to make a speedy return to employment. Even the defendant's own expert did not criticize the premise of preventing overinsurance. Indeed, the defendant's expert testified that no company would have issued Gruette a policy had it known of the defendant's existing disability coverage. More than sufficient evidence exists in the record from which a reasonable trier of fact could conclude that Mutual Benefit's disability coverage criteria were reasonable. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981).

The defendant's second contention rests on principles of agency law. In formulating this argument, the defendant refers us to several cases from the embryonic period of agency law in New Hampshire. *Domocaris v. Metropolitan Life Ins. Co.*, 81 N.H. 177, 123 A. 220 (1923) (citing *Delouche v. Insurance Co.*, 69 N.H. 587, 45 A. 414 (1899), and *McDonald v. Insurance Co.*, 68 N.H. 4, 38 A. 500 (1894)) followed an already established rule that an insurance company is chargeable with an agent's knowledge of the actual situation when the agent acts fraudulently. *Boucouvalas v. Insurance Co.*, 90 N.H. 175, 178, 5 A.2d 721, 725 (1939) overruled *Domocaris*, holding instead that an agent who commits fraud acts outside the scope of his employment, and the agent's knowledge of the fraud cannot be imputed to the insurer.

The defendant in the instant case argues that *Boucouvalas* is unjust. Under the rule of *Boucouvalas*, the fact that Gagne's conduct was fraudulent places him outside his scope of authority for purposes of imputing Gagne's knowledge and conduct to Mutual Benefit. Allowing Mutual Benefit to escape liability on the basis of absence of authority acts harshly as to Gruette, and others like him who fall prey to devious agents. The defendant urges us to return to the rule of *Domocaris*, and advances public policy reasons in favor of holding insurance companies liable for agents' fraudulent acts: insurance companies will be forced to engage in a policing activity of agents and brokers; and it is far better for sophisticated corpora-

tions, rather than the untutored public, to seek out and deter unethical salesmen.

We agree with the defendant that Gagne behaved in a reprehensible manner. He revealed himself to be a devious, unethical salesman, who, despite his superior knowledge of the insurance business, was more than willing to prompt an applicant to provide false information. We note, however, as an initial matter, that the defendant's agency argument is premised on the assumption that Gagne was an agent of Mutual Benefit. In fact, Gagne was not Mutual Benefit's agent. Instead, Gagne functioned as a broker, one employed by the insured to procure insurance from one of many potential insurers. 43 AM. JUR. *Insurance* § 109, at 186–87 (1982). Even if we were to accept the premise of the defendant's argument, the existence of still other facts of this case do not furnish an appropriate basis for returning to the rule of *Domocaris*.

The master found, *inter alia*, that Gagne had failed to disclose the existence of Gruette's current coverage because it would have diminished the likelihood of Mutual Benefit's issuance of a policy, and that Gruette had acquiesced in the non-disclosure because he knew or suspected that full disclosure would have disqualified him from obtaining the desired coverage. The master determined that Gruette was thus a willing participant in the misrepresentation and that, as such, he had acted with actual intent to deceive.

An adequate basis in the record exists to support the master's findings. Gagne testified that he told Gruette that he could only legitimately receive an amount of coverage proportionate to his income, and that a response of "none" to question 12(b) was necessary in order not to jeopardize the issuance of the Mutual Benefit policy. Gagne also stated that both he and Gruette knew the answer to 12(b) was false. Thus, even assuming, *arguendo*, that Gagne was Mutual Benefit's agent, Mutual Benefit would still not be precluded from avoiding the policy under a theory of estoppel, because Gruette had acted in bad faith. *Domocaris* itself only provides for recovery where the insured has not acted fraudulently. *Domocaris*, 81 N.H. at 182, 123 A. at 223 ("[t]he evidence warrants the conclusion that no false or fraudulent statements were made by the plaintiff or the assured to obtain the insurance, and therefore the defendant [insurance company] is liable"); *see Fisher v. Prudential Insurance Co.*, 107 N.H. 101, 106, 218 A.2d 62, 66–67 (1966).

The defendant's third contention rests on the factual element that Mutual Benefit violated a statutory provision in accepting an application from an agent not licensed with Mutual Benefit. RSA 402:26 (Supp. 1986). The defendant contends that this fact precludes the

company from rescinding the contract, under theories of estoppel, waiver and ratification. The plaintiff does not contest the fact that Mutual Benefit violated RSA 402:26 (Supp. 1986), which reads as follows:

"I. If a person shall act or aid in any manner in the negotiation of insurance other than life insurance, or shall solicit or receive any risk or application for such insurance, or, not being a salaried office employee, shall receive money or value therefor, for any insurance company or agent, without a license from the commissioner, or after the license granted to him, or to the company for which he acts as agent, has been revoked, he shall be fined not more than $200; but any policy issued on an application thus procured shall bind the company if otherwise valid.

II. No such company shall issue a policy or other evidence of insurance through an unlicensed agent or other unlicensed person. Any violation of this provision shall result in the company being fined not more than $2,500; and, upon repeated violations, the commissioner may suspend or revoke the license of the company."

RSA 402:16 requires the licensing of all insurance agents with the State. Once a license is granted, the license states the company for which the licensee may act as an agent. Gagne was not licensed as a Mutual Benefit agent. Nor was he licensed as a broker, which would have permitted him to transact business with any licensed insurance company without prior designation as to which companies he could solicit. RSA 405:32. Gagne thus fell within the proscriptive ambit of RSA 402:26, I (Supp. 1986). Mutual Benefit, because it issued the policy, was subject to the sanctions of RSA 402:26, II. The disputed issue is, of course, whether the statutory violation prevents Mutual Benefit from rescinding the contract.

■■ The language of the statute states that a policy procured through an unlicensed agent "shall bind the company if otherwise valid." RSA 402:26, I (Supp. 1986). We read this language as creating certain basic protections for the consumer. In general, an insurance company should not be permitted to escape contractual obligations when it writes policies through improperly licensed or unlicensed agents. The fact, however, that an insurance company may have violated the statute does not end the inquiry. The statute binds the insurance company only "if [the policy] is otherwise valid." This provision allows the company to contest the validity of the pol-

icy. If the company persuades the trier of fact that, notwithstanding the violation, the policy was invalid, then the company avoids performing under the contract. The defendant asks us to prevent Mutual Benefit from disputing the validity of the contract. This position directly conflicts with the plain meaning of RSA 402:26, I (Supp. 1986). Our rejection of the defendant's argument does not mean Mutual Benefit escapes sanctions for its illegal conduct. It simply means that the statute does not contemplate the type of sanction the defendant requests.

The defendant's fourth argument also rests on interpretation of statutory provisions. The pertinent sections of RSA 415:6 read:

> "II. OTHER PROVISIONS. Except as provided in paragraph III of this section, no such policy delivered or issued for delivery to any person in this state shall contain provisions respecting the matters set forth below unless such provisions are in the words in which the same appear in this section . . . .
>
> &ast; &ast; &ast;
>
> (4) A provision in all non-group policies as follows: Insurance with Other Insurers: If there be other valid coverage, not with this insurer, providing benefits for the same loss on a provision of service basis or an expense incurred basis, payment shall not be prorated or reduced. In such a case, the insured shall be entitled to payment from both insurers. . . .
>
> (5) A provision in all non-group policies as follows: Insurance with Other Insurers: If there be other valid coverage, not with this insurer, providing benefits for the same loss on other than an expense incurred basis, payment shall not be prorated or reduced. In such a case, the insured shall be entitled to payment from both insurers."

RSA 415:6, II(4) (Supp. 1986) and (5).

The defendant states, and correctly so, that RSA 415:6, II(4) and (5) require the employment of statutory language in the policy if a company wishes to refer to the effect of disability policies with other insurers. The requisite language in turn states that an insured will collect under all disability policies. The defendant points out that the application form requires disclosure of other disability policies. Mutual Benefit, in keeping with its internal practices, then refuses to issue policies that will result in overinsurance. The defendant asserts that Mutual Benefit's screening procedures contravene an alleged statutory requirement of paying on all disability insurance

policies. Thus, overinsurance considerations cannot possibly be considered material, inasmuch as overinsurance is supposedly allowed by the statutory framework.

■ We think that the defendant's construction of the provisions is overbroad. In our view, RSA 415:6, II(4) and (5) go no further than to state that, at the point a policy is written and delivered, an insurance company cannot contract out of certain obligations based on policies with other companies. The statutory provisions do not apply by their terms to applications for insurance. If the legislature wished to prevent discrimination in the issuance of insurance policies based on overinsurance, it could easily have written a statutory provision stating that no application for disability insurance shall be refused on the basis of policies with other companies. The record is clear that Mutual Benefit possesses institutional guidelines against overinsurance, and would not have issued the policy to Gruette had the company known of his policy with INA. We are reluctant to adopt a construction of RSA 415:6, II(4) and (5) that does not appear to have a reasonable foundation in the statutory language. We thus reject this last argument and hold that the defendant's omission was properly deemed material.

*Affirmed.*

All concurred.