Towne v. Metropolitan Life Ins.     CV-96-37-SD    08/13/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Richard Towne, Sr.

   v.                                Civil No. 96-37-SD

Metropolitan Life Insurance Co.


**O R D E R**


    Plaintiff Richard Towne, Sr., brought this action in state court claiming he is entitled to benefits as the named beneficiary of a life insurance policy issued by defendant Metropolitan Life Insurance Company (MetLife) to his now-deceased wife Bonnie L. Towne.  Defendant, a citizen of New York, removed the case to federal court pursuant to 28 U.S.C. § 1332. Presently before the court is defendant's motion for summary judgment, to which plaintiff objects.


<u>Background</u>

    Bonnie Towne, plaintiff's wife, was insured by MetLife under a renewable one-year term life insurance policy with premium adjustment.  Prior to issuance, on March 18, 1993, James Anctil, a MetLife salesperson, met with the Townes to discuss Bonnie Towne's application for coverage.  Anctil Deposition at 10; Towne Deposition at 56.  Anctil read over the application for insurance

benefits, asked the Townes some questions, and made notations. Towne Deposition at 58-59, 65. Question 9 of the insurance application asked for the last date the proposed insured smoked/used cigarettes. Mrs. Towne's application has an empty box next to the word "never" with the date "1986" written above the word "cigarette". Defendant's Motion, Exhibit B. Plaintiff admits that his wife started smoking cigarettes in 1973 and that from 1992 until her death she smoked two packages of cigarettes per day. Towne Deposition at 51. Plaintiff also admits that he was a smoker at the time the application was being completed and remembers smoking in front of Anctil. Towne Deposition at 65. He claims that Anctil, knowing that he and his wife both smoked, advised them to apply as nonsmokers and said MetLife would never detect the truth. Towne Deposition at 63-66.[1] Plaintiff freely admits that the misrepresentation about smoking was made to obtain a less expensive premium and that both he and his wife agreed to follow Anctil's advice. Towne Deposition at 66-67.

On October 14, 1994, Mrs. Towne was taken to the Portsmouth Regional Hospital after apparently ingesting "multiple drugs including flexeril, lorazepam, and alcohol." Report of the Office of the Chief Medical Examiner attached to Defendant's

---

[1]Anctil denies this, but, for purposes of summary judgment, the court accepts plaintiff's evidence as true.

Motion.  Two weeks later, after being taken off all life support mechanisms, Mrs. Towne passed away.  Plaintiff does not contest the fact that his wife took her own life.

Following the death of his wife, plaintiff filed a claim requesting that MetLife pay him the proceeds from his wife's insurance policy.  After investigating the matter, MetLife refused to pay, and instead issued plaintiff a check for an amount equal to all premiums paid under the policy plus interest.  Plaintiff refused MetLife's check and filed this action.  MetLife counterclaimed to rescind the policy, arguing that (1) plaintiff's wife misrepresented and excluded material facts on her application for coverage and (2) the insured's suicide voids the policy under its suicide exclusion clause.


Discussion

1.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  The court's function at this stage "is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Stone & Michaud

3

Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The moving party has the burden of establishing the lack of a genuine issue of material fact. Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). The court views the record in the light most favorable to the nonmoving party, granting him all inferences in his favor. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). Nonetheless, the nonmovant must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case," Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), and cannot merely rely on allegations or denials within the pleadings. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994) (quoting Anderson, supra, 477 U.S. at 256).

2. The Materiality of the Smoking Misrepresentation

MetLife argues that the insured's misrepresentation regarding past cigarette use is grounds for rescission as it is material to the rate the Townes were charged. An insurer may deny coverage under a life insurance policy if the application includes a material misstatement. Keyser v. Metropolitan Life

4

Ins. Co., Civ. No. 95-157-JD (D.N.H. 1996) (citing Perkins v. John Hancock Mut. Life Ins. Co., 100 N.H. 383, 385, 128 A.2d 207, 209 (1956); Amoskeag Trust Co. v. Prudential Ins. Co. of Am., 88 N.H. 154, 160-63, 185 A. 2, 7 (1936)). The test for the materiality of a false statement on an insurance application "is whether the statement could reasonably be considered material in affecting the insurer's decision to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon." Mutual Benefit Life Ins. Co. v. Gruette, 129 N.H. 317, 320, 529 A.2d 870, 871 (1987) (quoting Taylor v. Metropolitan Life Ins. Co., 106 N.H. 455, 458, 214 A.2d 109, 112 (1965)).[2]

Applying the above standard, the insured's misrepresentation is material. The answer to Question 9 indicates that Mrs. Towne was a nonsmoker, when in fact she was a smoker. MetLife provides sufficient evidence to show that had plaintiff's wife answered correctly, she would have been assigned to the "smoker class" and

---

[2]New Hampshire follows the majority of jurisdictions in holding that the materiality of a misrepresentation on an insurance application is based, not on whether it relates to the insured's eventual cause of death, but, rather, on whether the insurer would have charged a higher premium or denied coverage if the correct application had been submitted. See APPLEMAN, INSURANCE LAW AND PRACTICE § 245, at 125 (1981 ed.); New York Life Ins. Co. v. Wittman, 813 F. Supp. 1287, 1298 (N.D. Ohio 1993) (criticizing the minority rule for failing to provide a deterrent; "a dishonest applicant would assume no risk by his duplicity unless he haplessly succumbed to the very condition he concealed").

5

charged a higher premium. See "Underwriting Criteria" and Affidavit of Charles F.G. Jones, M.D., attached to Defendant's Motion.

Plaintiff responds by arguing that (1) his wife's misrepresentations were made upon the suggestion of defendant's salesperson and defendant therefore is bound by the false answer and (2) the insurance application and defendant's underwriting criteria are ambiguous and should be construed in plaintiff's favor. As discussed below, the court finds these arguments unpersuasive.

First, Anctil's role in the misrepresentation is minimized because his advice was fraudulent and because the Townes, despite their suspicions, followed it in bad faith. Under New Hampshire law, an insurance salesperson acts as an agent for the insurance company.[3] However, New Hampshire courts consistently follow the common law principle that an insurance agent's knowledge is not chargeable to the insurer when the agent commits an independent, fraudulent act. Boucouvalas v. John Hancock Mutual Life Ins. Co., 90 N.H. 175, 177, 5 A.2d 721, 723 (1939) (holding that an

---

[3]Under New Hampshire law, "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured, or his beneficiary, and the company issuing any policy upon such application, be regarded as an agent of the company and not the agent of the assured." New Hampshire Revised Statutes Annotated (RSA) 408:7.

agent who falsely reports applicant's answers acts on his own account and for his own benefit). Anctil's advice to the insured, that she could misrepresent her smoking habit in order to pay a cheaper premium without detection by MetLife, amounted to an independent fraudulent act. MetLife did not authorize Anctil to advise in such a manner, and there is no evidence to suggest that MetLife knew of Anctil's behavior. Accordingly, Anctil's knowledge is not attributable to MetLife.

Further, because plaintiff and his wife acted in bad faith, plaintiff is barred from recovery. Under New Hampshire law, a person who knowingly conceals information or provides false information with the intent to defraud or deceive an insurer commits insurance fraud. See RSA 638:20. In Gruette, supra, 129 N.H. 317, 529 A.2d 870, an insurance applicant gave the insurer false information. The applicant believed, relying on an agent's advice, that if he answered truthfully his application would be rejected. The court rescinded the policy, finding that the applicant acted in bad faith and that his actions were not excused by the fact that the agent was "a devious, unethical salesman, who, despite his superior knowledge of the insurance business, was more than willing to prompt an applicant to provide

7

false information." Id. at 322, 529 A.2d at 873.[4]

Plaintiff admits that he and his wife accepted Anctil's advice in order to receive a lower premium. By encouraging the Townes to provide false information, Anctil may have been a "devious [and] unethical salesman," see id.; however, it is undisputed that plaintiff and his wife willingly participated in the deception.[5] When an applicant reasonably relies on the authority or judgment of an agent, the insurer should be charged with its agent's knowledge. Taylor, supra, 106 N.H. at 459-60, 214 A.2d at 113 (citing Whitmore v. Mutual Life Ins. Co., 173 A.2d 584 (Vt. Sup. Ct. 1961)).[6] However, where the plaintiff should have been and was suspicious of Anctil's advice, such

---

[4]Unlike the instant case, the insurance agent in Gruette was not the insurance company's agent. However, the court opined that, even assuming arguendo that he was the insurer's agent, the applicant's bad faith still permitted the voiding of the policy.

[5]Plaintiff states that "[t]here is no showing of a motive to cheat the company by the insured." Plaintiff's Objection at 9. This statement contradicts plaintiff's own deposition testimony in which he admits that his wife filed her application as a nonsmoker in order to receive a less expensive premium. Towne Deposition at 65-67.

[6]Plaintiff correctly points out that in Taylor, supra, 106 N.H. at 459, 214 A.2d at 113, the New Hampshire Supreme Court held that, in the absence of fraud or collusion between the agent and the applicant, the act of telling a proposed insured what information to put on an insurance application is within the agent's scope of employment, thereby binding the insurer to any false answer.

8

reliance becomes unreasonable and alleviates the insurance company's obligations. See Green v. Davila, 392 F. Supp. 533, 535 (D.P.R. 1975) (stating that "a person dealing with an agent may not act negligently or blindly trust the agent's statements but must use prudent and reasonable diligence to ascertain whether the agent is acting within the scope of his powers").

In addition, the insured signed the application and thus "was bound by the representation of truthfulness contained in the application . . . ." See Keyser, supra, CV-95-157-JD at 6 n.3 (citing Boucouvalas, supra, 90 N.H. at 175, 5 A.2d at 725). In Gruette, supra, 129 N.H. at 319, 529 A.2d at 871, the court found that the insured's participation in the deception was "compounded by the existence of cautionary language above the applicant's signature . . . ." Here, as well, the insured's signature follows language attesting to the truthfulness of her application. Defendant's Motion at Exhibit B. As such, MetLife was entitled to rely on her signature.[7]

Secondly, plaintiff's argument that the insured's

_____

[7]The fact that plaintiff claims his wife did not read the application which she signed is no defense. Towne Deposition at 61-62. See Levesque v. Metropolitan Life Ins. Co., 88 N.H. 41, 43, 183 A. 870, 871 (1936) (stating that where the applicant is provided an opportunity to read the application, he is bound by his own signature); see also Van Riper v. Equitable Life Assur. Soc. of U.S., 561 F. Supp. 26, 32-33 (E.D. Pa. 1982), aff'd, 707 F.2d 1397 (3d Cir. 1983).

application and MetLife's underwriting criteria are ambiguous is without merit.  In his motion, plaintiff contends that 1986 (the date he wrote on the application after Question 9) was coincidentally the date when Bonnie Towne started smoking, implying that perhaps the insured did not misrepresent anything but that Anctil simply asked him a different question.  Although ordinarily any ambiguities in an insurance policy are to be construed in favor of the insured, Trombly v. Blue Cross/Blue Shield of NH-VT, 120 N.H. 764, 771, 423 A.2d 980, 985 (1980), here, no ambiguity exists.  The application clearly states, "Indicate date Proposed Insured last smoked/used: cigarette . . . ."  Plaintiff's Objection, Exhibit A, at 3.  Beside this statement, the year "1986" appears in handwriting.  Plaintiff's claim that "1986" is actually the year his wife started smoking is belied by his own admission that his wife began smoking in 1973.  See Towne Deposition at 51.  It also contradicts plaintiff's deposition testimony that he and his wife knew of the falsity of the information placed on the application.

Furthermore, having reviewed the underwriting criteria, the court finds no ambiguity regarding premium rates for applicants who smoke or have smoked within one year of completing the application.

The court finds that defendant is entitled to summary

10

judgment.  Because plaintiff and his wife acted in bad faith and intended to deceive MetLife, the fact that Anctil knew of or suggested the misrepresentation does not aid the plaintiff. Further, the court holds that the misrepresentation was material, relieving MetLife from its obligations under the policy.

<u>Conclusion</u>

Defendant's motion for summary judgment (document 9) must be and herewith is granted.  The clerk shall enter judgment accordingly.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

August 13, 1997

cc:   Donald L. Wyatt, Jr., Esq.
      William D. Pandolph, Esq.

11